IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAYTON NEWSPAPER, INC., et al.,     :

     Plaintiffs,         :

                             Case No. 3:00cv235

          vs.             :

                             JUDGE WALTER HERBERT RICE

DEPARTMENT OF VETERANS AFFAIRS,  :

     Defendant.         :

---

OPINION, DECISION AND ENTRY RECONSIDERING BUT DECLINING
TO ALTER JANUARY 23, 2003, EXPANDED OPINION; DEFENDANT'S
CLAIM OF PRIVILEGE DEEMED WITHDRAWN; JUDGMENT TO ENTER
IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFFS;
TERMINATION ENTRY

---

This opinion is in reconsideration of this Court's prior expanded opinion

issued on January 23, 2003.[1]  Dayton Newspapers Inc. v. Dep't of Veterans

Affairs, 257 F. Supp. 2d 988 (S.D. OH 2003).  Plaintiff Russell Carollo, a reporter

for the Dayton Daily News, and Plaintiff Dayton Newspapers Inc., the publisher of

that newspaper, filed a Freedom of Information Act ("FOIA") request, pursuant to 5

U.S.C. §552(a)(3), with Defendant, the Department of Veterans Affairs ("VA").

Plaintiffs sought production of more than 100 data fields maintained in the VA's

Tort Claims Information System ("TCIS").  Defendant claimed that the Office of the

General Counsel ("OGC"), the department to whom Plaintiffs submitted their FOIA

---

[1]The January 23, 2003 opinion is an interlocutory order and is subject to revision
anytime before final judgment adjudicating all the claims is entered.  F.R.C.P.
54(b).

request, maintained only 33 data fields in the TCIS. Additionally, Defendant claimed that eight of these 33 data fields were not subject to disclosure under FOIA exemptions.

On January 23, 2003, this Court found that the scope of Plaintiffs' FOIA request was limited to the 33 data fields collected by the OGC. Id. at 992. Of these 33 data fields, eight were in dispute. The Court ordered Defendant to immediately disclose four of these data fields and part of a fifth such as they did not fall under any FOIA exemptions. The Court then ordered Defendant to file a Vaughn index regarding two data fields that the VA had claimed were exempt for reasons of privilege. Id. at 1006. The Court upheld the remainder of the VA's exemption determinations.

On January 14, 2005, Plaintiffs filed a Motion for Reconsideration (Doc. #30), alleging that the discovery of new evidence proved that Defendant had access to more than 33 data fields. On September 29, 2005, this Court granted Plaintiffs' Motion for Reconsideration, stating that it would reconsider the expanded opinion, but not necessarily alter it. (Doc. #51).

Upon reconsideration, this Court finds that the newly discovered evidence does not affect this Court's prior reasoning. The evidence submitted by Plaintiffs proves that the OGC now has access to more than 33 data fields. However, the OGC's ability to access these data fields occurred well after the temporal scope of Plaintiffs' 1995 FOIA request. Therefore, this Court will not amend its prior

2

opinion.

I.    **Background**

    A.    *Procedural History*

On February 16, 1995, Plaintiffs filed a Freedom of Information Act (FOIA) request with the Department of Veterans Affairs (VA).  Id. at 991.  They addressed the FOIA request to the VA's Office of General Counsel (OGC) at the VA's central office.  Mr. Carollo requested "access to and copies of the Tort Claims database and/or a database of a similar name and/or all computer records of legal claims for the past 10 years."  Mem. in Supp. of Pls. Mot. for Recons. (Doc. #38) at Ex. 1A. On March 8, 1995, the OGC provided Plaintiffs with a data dictionary for the Tort Claims Information System (TCIS), but denied Plaintiffs access to the database based on statutory exemptions.  Id. at Ex. 1B.  Plaintiffs appealed this decision and on December 14, 1995, the VA issued a final administrative decision providing Plaintiffs access to six of the 33 data fields it maintained in the central office, and denying Plaintiffs access to the remaining data fields on the grounds that they fell within various FOIA exemptions.  Id. at Ex. 1D.  On May 5, 2000, Plaintiffs filed a lawsuit appealing the VA's final administrative decision.

Plaintiffs and Defendant continued to correspond with one another and ultimately were able to narrow the dispute to two contested issues.  First, Plaintiffs claimed that the TCIS contained almost 119 data fields and requested that the OGC produce all of them.  In response, Defendant claimed that the OGC only

3

maintained 33 data fields of the over 100 data fields contained in the TCIS. The other data fields were maintained in the various offices of the VA's regional counsel. Dayton Newspapers Inc., 257 F. Supp. 2d at 992. Defendant claimed that to produce all 119 fields would place an unreasonable burden on the OGC, requiring it to create a new software program to read the data fields recorded by the regional offices. Second, Plaintiffs challenged the VA's designation of eight data fields as exempt under FOIA. Id. at 995. Plaintiffs and Defendant filed cross motions for summary judgment, raising these issues, and Defendant filed a motion to dismiss. On January 23, 2003, this Court denied Defendant's Motion to Dismiss and overruled in part and sustained in part Plaintiffs' and Defendant's Motions for Summary Judgment. The Court determined that the OGC only had access to 33 data fields and directed Plaintiffs to file FOIA requests with the regional offices in order to obtain the other data fields. The Court overruled several of the VA's exemption determinations and required disclosure of those fields. The Court upheld the VA's exemption determinations as to other fields. Where the VA claimed a privilege, this Court ordered the VA to submit a Vaughn index, indicating why each document was redacted for privilege. Id. at 1006. On April 18, 2005, Plaintiffs filed a Motion for Reconsideration.

      B.   *Factual Findings*

      At the time Plaintiffs' submitted their 1995 FOIA request, the VA maintained the Tort Claims Information System (TCIS). The TCIS was created to capture tort

claims information collected by the OGC and its more than 20 offices of regional counsel. When the TCIS was established, the OGC identified a list of data fields that each regional office was to complete for each tort claim against the VA. The TCIS would then download these data fields nightly into the national database. <u>Id.</u> at 992. In addition to the data fields identified by the OGC, the TCIS provided each individual regional office the option to create and maintain as many data fields as desired. This option created the possibility that the national TCIS database maintained by the OGC would collect considerably fewer data fields than each regional database. <u>Id.</u> at 992.

In its prior decision, this Court ruled that requiring the OGC to produce all the data fields recorded by the OGC and the regional offices would necessitate the "drastic measure" of ordering the OGC to create a new comprehensive database. <u>Id.</u> at 1000. Acknowledging that this was not required by FOIA, this Court restricted the scope of Plaintiffs' 1995 FOIA request to the fields maintained by the OGC and not to those maintained by the regional offices. Relying on information submitted by Defendant, this Court found that, while there may be over 100 potential data fields, the OGC's central database collects information from, at most, only 33 of those fields during its nightly sweep of the regionally maintained databases. <u>Id.</u> at 992. As a result of this opinion, Plaintiffs filed FOIA requests with each regional office on November 25, 2003, in order to obtain the TCIS data fields not collected by the OGC. Pls. Mem. in Supp. of Mot. for Recons.

(Doc. #38) at 5 & Defs. Mem. in Opp'n to Pls. Mot. for Recons. (Doc. #40) at Ex.

1.

In early 2004, in an effort to respond to Plaintiffs' regional FOIA requests,

regional offices sent several data dictionaries to Plaintiffs.  Among these were the

dictionaries of two databases, database 2240 (hereinafter "DB2240"), which

tracked non-medical malpractice tort claims, and database 2280 (herinafter

"DB2280"), which tracked medical malpractice tort claims.   Pls. Mem. in Supp. of

Mot. for Recons. (Doc. #38) at 6.  Plaintiffs reviewed these dictionaries and

discovered that the data fields for the DB2240 and DB2280 databases were similar

across each regional office.

In an effort to understand these databases,  Plaintiffs corresponded with

both the regional offices and the OGC.  After discussions between Plaintiffs and

the OGC in April, 2004, the OGC agreed to test whether it could retrieve

information from the entire DB2240 and DB2280 databases.  Id. at 8.  Efforts

proved fruitful and during 2004, the OGC produced a current copy of the TCIS

database through October, 2002, redacted copies of DB2280 and DB2240

databases and redacted copies of the medical malpractice database maintained in a

new system called the GCLaws.  Defs. Mem. in Opp'n to Pls. Mot. for Recons.

(Doc. #40) at 7.  As discussions between Plaintiffs and Defendant progressed, it

was discovered that sometime in late 2001, the VA had decided to phase out the

use of the TCIS, transferring all the data, including data fields maintained by the

OGC and the regional offices, to a new system, the GCLaws. Pls. Mem. in Supp.

of Mot. for Recons. (Doc. #38) at Ex. 6(b), 6(g) & 6(h). Between the end of 2001

and October 1, 2002, the VA had transferred all of the tort claims data fields from

the regional offices into the GCLaws database.

Plaintiffs have filed a Motion for Reconsideration, asking this Court to

compel Defendant to produce non-exempt material from the GCLaws database that

was redacted. Id. at 17. Plaintiffs claim that as of October 1, 2002, the OGC had

access to the 119 data fields that Plaintiffs requested in their 1995 FOIA request.

Id. at 10. As such, Plaintiffs contend that the OGC had a duty to inform this Court

of this change and to produce all the tort data to the Court, since this change

occurred before the January 23, 2003, expanded opinion.[2] Id. at 11. Plaintiffs

also speculate that the OGC possessed these capabilities much earlier than

October, 2002, thus rendering inaccurate the OGC's representation that it

maintained only 33 data fields. Id. at 16. Accordingly, Plaintiffs now ask this

Court to reconsider its January 23, 2003, decision in light of this new information.

Defendant argues that the issues raised in Plaintiffs' Motion for

Reconsideration are outside the scope of this Court's January 23, 2003, opinion.

At issue in the Expanded Opinion was Defendant's 1995 FOIA request. Yet,

Plaintiffs' Motion for Reconsideration requests the production of non-exempt,

---

[2]Defendant's alleged duty to disclose any developments to this Court is irrelevant
to whether the newly discovered evidence impacts the scope of an agency's
search under FOIA. Therefore, this Court will not address this argument.

7

redacted data produced pursuant to their November, 2003, FOIA requests. Def. Resp. to Pls. Reply Mem. (Doc. #53) at 5. Defendant asserts that in order to challenge the VA's response to the 2003 FOIA requests, Plaintiffs should file a new lawsuit or Defendant should be granted permission to brief the issues related to Plaintiffs' request. Id. at 6. Defendant claims that it had no duty to inform this Court of any transfer of data in 2002, because it did not have access to more than 33 fields until early 2004. Defs. Mem. in Opp'n to Pls. Mot. for Recons. (Doc. #40) at 9. Through several affidavits, Defendant asserts that although the data transfer from the regional offices to the centralized GCLaws system was complete by late 2002, the data was not reconciled, and therefore not accurate or useful[3], until early 2004, when the GCLaws went online. Id. at 7-9. Since the data was

---

[3]Defendant cites to the declarations of Loretta Hunter (Doc. #41), Anthony Diana (Doc. #43) and Jeffery Corzatt (Doc. #46) to demonstrate that the VA did not have the ability to produce accurate data fields when the data from the regional counsels was downloaded in October, 2001. Diana states that prior to 2004, when the information in the GCLaws database was reconciled, the information downloaded to GCLaws was fraught with inconsistencies and gaps in information. Diana's declaration describes her use of a shareware software program to test whether fields from the regional offices could be collected and accurately compiled. After running the software, it was revealed that there were 38 differences between the data dictionaries of Nashville, Tennessee, and St. Louis, Missouri, 98 differences between the DB2280 data dictionaries for San Francisco, California, and Portland, Oregon, 72 differences between the data dictionaries for Bay Pines and St. Louis and there were 15 fields used in Bay Pines, Florida, but not Waco, Texas. Diana Dec. at 4-6. In order to reconcile these differences, the VA had to (1) obtain the data dictionary from each of the Regional Counsel Offices, (2) compare them with each other, (3) note all deletions, additions and changes and (4) write separate programs to retrieve the data for each regional office. Diana Dec. at 6.

not accessible until early 2004, Defendant did not have access to more than the 33 data fields until well outside the temporal scope of Plaintiffs' 1995 FOIA request. Def. Resp. to Pls. Reply Mem. (Doc. #53) at 3. Therefore, this Court should not amend its prior decision.

This Court agrees with Defendant. Plaintiffs have failed to offer any evidence suggesting that Defendant had access to more than 33 data fields, during the time relevant to the scope of their 1995 FOIA request. Accordingly, for reasons set forth below, this Court finds no reason to alter its expanded opinion.

II.     **Argument**

The only proper issue for reconsideration is whether Defendant had access to more than 33 data fields, during the scope of Plaintiffs' 1995 FOIA request. For reasons discussed below, Plaintiffs' objections to the production of material in response to their November, 2003, FOIA request, indeed, the entirety of the 2003 request, are outside the scope of this Court's prior opinion regarding their 1995 FOIA request. Plaintiffs have produced no evidence that the OGC had access to more data fields than it previously represented. As such, this Court's prior opinion remains unchanged.

A.     *Cut-Off Date*

The scope of a Freedom of Information Act (FOIA) request is limited by two factors, its subject matter and its temporal scope. FOIA obligates agencies to conduct searches in good faith and in a manner "reasonably calculated to uncover

9

all relevant documents" sought through a FOIA request.  Steinberg v. United States

Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. United

States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1985)).  Courts have

ruled that an agency should broadly construe the subject matter of a FOIA request.

 LaCedra v. Exec. Office for United States Att'ys, 317 F.3d. 345, 348 (D.C. Cir.

2003)( a responding agency "should construe a Plaintiff's FOIA request liberally");

Florida Immigrant Advocacy Ctr. v. NSA, 380 F.Supp.2d 1332, 1345 (S.D. Fl.

2005).  However, this broad obligation is limited by a request's temporal scope.

The Fifth Circuit ruled that "there has to be a temporal deadline for documents that

satisfy [a FOIA] request."  Church of Scientology of Texas v. IRS, 816 F. Supp.

1138, 1148 (W.D. TX. 1993).  This deadline is often referred to as the cut-off

date and serves as an aid in determining which agency records are responsive and

which are not responsive.  All records created after the cut-off date are treated as

outside the scope of the request.

    An agency's search is held to a reasonableness standard.  McGehee v. CIA,

533 F. Supp. 861, 865 (D. D.C. 1982)("McGehee I")[4]; Founding Church of

Scientology v. NSA, 610 F.2d 824, 837 (D.C.Cir. 1979); Goland v. CIA, 607 F.2d

339, 353 (D.C.Cir.1978).  When reviewing the adequacy of an agency's search,

---

[4]Following subsequent proceedings permitting the CIA to present further evidence
that its cut-off date was reasonable, the court in McGehee v. CIA, 697 F.2d 1095,
1105 (D.C. Cir. 1983) ("McGehee II") found the cut-off date to be unreasonable.

District courts apply a de novo standard.  Steinberg, 23 F.3d at 551.  However,

> FOIA judicial review, . . . while de novo, remains an assessment
> of the agency decision to withhold a document. That decision,
> we hold, ordinarily must be evaluated as of the time it was
> made . . .  To require an agency to adjust or modify its FOIA
> responses based on post-response occurrences could create an
> endless cycle of judicially mandated reprocessing.

Church of Scientology of Texas v. IRS, 816 F. Supp. 1138, 1157 (W.D. TX. 1993)

(quoting Bonner v. U.S. Dep't of State, 928 F.2d 1148, 1152 (D.C. Cir. 1991).

In Church of Scientology of Texas, the IRS withheld documents that were

responsive to Plaintiff's FOIA request, pursuant to FOIA's law enforcement

exemption.  Under this exemption, agencies did not have to produce documents

that "could reasonably be expected to interfere with enforcement proceedings."

Id. at 1156.  The Fifth Circuit found that the documents withheld by the IRS

qualified for this exemption at the time of the IRS search.  Ruling that a "time of

request" cut-off date was reasonable, the court noted that the IRS was under no

obligation to release documents that subsequently became non-exempt after the

cut-off date.  Id. at 1157.  The IRS did not have to produce responsive documents

that became non-exempt as a result of a post-response occurrence.

This Court's decision whether to amend its prior decision rests on a

determination of the proper temporal scope of Plaintiff's 1995 FOIA request.  If the

VA had access to more than 33 data fields during the temporal scope of Plaintiff's

1995 FOIA request, before the VA's cut-off date, than this Court must alter its

11

prior decision.  However, if the VA obtained access to these data fields after a reasonable cut-off date, as a result of a post-response occurrence, this Court's prior decision will stand.

Plaintiffs claim that the cut-off date for the OGC's search should be sometime in 2003, when Defendant began compliance with this Court's January 23, 2003, expanded opinion.  Pls. Mem. in Supp. of Mot. for Recons. (Doc. #38) at 15.  Plaintiffs claim that this is an appropriate cut-off date, since Defendant never provided Plaintiffs with notice of an earlier cut-off date.  Id. at 15.  Next, Plaintiffs argue that even if an earlier cut-off date was reasonable, the searches conducted by Defendant in compliance with this Court's 2003 opinion constitute a supplemental search and thus mark a new cut-off date.  Id. at 15.  Plaintiffs continue that the resultant cut-off date, sometime in 2003, would render Defendant's prior representation that it had access to only 33 data fields during the scope of the FOIA request false, because, as early as October 1, 2002, Defendant had access to all the data fields from the regional offices.

Defendant responds that setting a cut-off date in 2003, more than seven years after a final agency decision on the FOIA request, is unreasonable.  Def. Resp. to Pls. Reply Mem. (Doc. #53) at 5.  Defendant also asserts that its compliance with the 2003 expanded opinion does not constitute a supplemental search from which a new cut-off date should be set.  Id. at 5.

This Court finds that, under the facts of this case, a reasonable cut-off date

is the date of the VA's final decision, December 14, 1995. Defendant's ability to access more than 33 data fields occurred well after that date. Such an occurrence is the type of post-response change in circumstances that the court in Church of Scientology of Texas advised courts to disregard when reviewing the adequacy of an agency's FOIA response.

The purpose of a cut-off date is two-fold. It establishes the agency's obligations to identify responsive documents, and it puts the requester on notice, so that the requester may submit subsequent requests for records outside the scope of the initial request. McGehee v. CIA, 697 F.2d 1095, 1105 (D.C. Cir. 1983)("McGehee II"). FOIA does not indicate what cut-off date should be used by agencies. However, a cut-off date will only be "valid when the limitation is consistent with the agency's duty to take reasonable steps to ferret out requested documents." Id. at 1101. Agencies use a variety of cut-off dates such as: "the date of a FOIA request; the date of its receipt at the proper office in the agency; the point at which a record search is initiated or the time of its completion; or even the point at which all FOIA processing is concluded." Use of "Cut-off" Dates for FOIA Searches, FOIA POST (United States Department of Justice Office of Information and Privacy), May 6, 2004 at http://www.usdoj.gov/oip/foiapost/2004 foiapost14.htm. Court's are split as to the reasonableness of different cut-off

dates.[5]  These determinations rely heavily on the facts of each case.

A significant factor in considering the reasonableness of a cut-off date is whether the agency gives the requester notice of that date.  McGehee II, 697 F.2d at 1105; Judicial Watch v. DOE, 310 F.Supp.2d 271, 305(D. D.C. 2004) *aff'd in relevant part rev'd on other grounds* 412 F.3d 125 (D.C. Cir. 2005).  Notice can be given constructively via published agency regulations or through each agency's FOIA reference Guides.  5 U.S.C. §552(g).  An agency can also give actual notice by indicating the cut-off date used by the agency in correspondence between the agency and the requestor.  Public Citizen v. Dep't of State, 100 F. Supp. 2d 10, 21 (D. D.C. 2000) *aff'd in relevant part rev'd on other grounds* 276 F.3d 634 (D.C. Cir. 2002).

Limiting a search by applying a cut-off date, without providing notice of the date to the requester, renders the search unreasonable.  In McGehee II, the CIA applied a date of request cut-off date to a FOIA request without notifying the

---

[5] Several courts have ruled that the date the search begins is a reasonable cut-off date.  See Edmonds Inst. v. DOI, 383 F. Supp. 2d 105, 110-111 (D. D.C. 2005)(endorsing the date the search began and rejecting a date of release of responsive records cut-off date); Defenders of Wildlife v. DOI, 314 F.Supp.2d 1, 12 n10 (D. D.C. 2004)(date the search began a reasonable cut-off date); Public Citizen v. Dep't of State, 276 F.3d 634, 643 (D.C. Cir. 2002)(agency must establish compelling justification to use date of request rather than date of search); McGehee v. CIA, 697 F.2d 1095, 1104 (D.C. Cir. 1983)(McGehee II)(date of request cut-off unreasonable).  But see Church of Scientology of Texas v. IRS, 816 F. Supp. 1138, 1148 (W.D. TX. 1993)(the most "logical deadline" is the date of request).

requester.  The D.C. Circuit ruled that:

> it would be extremely difficult for the CIA to convince us that it may "reasonably" use any cut-off date without so informing the requester . . . Unless on remand some extraordinary showing is forthcoming of why the agency should not be required to inform requesters of the dates it is using, the CIA's unpublicized temporal limitation of its searches should be held invalid.

McGehee II, 697 F.2d at 1105.

At least one court has required an agency to conduct a supplemental search, using the date of that search as the cut-off date, when the agency did not provide the FOIA requester with notice of the initial cut-off date.  Judicial Watch, 310 F.Supp.2d at 305.  In Judicial Watch, Plaintiff sent FOIA requests to several agencies, including the Department of the Interior("DOI").  In responding to Plaintiff's request, the DOI set a cut-off date without informing the requester.  Id. at 305.  The district court for the District of Columbia found this unreasonable, concluding that such prevented the requester from submitting supplemental requests to augment the previous search.  As a result, the court ordered the DOI to "conduct a supplemental search using the date of the search as a cut-off date".  Id. at 305.

Here, Plaintiffs claim that they were never given actual or constructive notice of Defendant's cut-off date.  They argue that, as a result, the initial search was unreasonable.   Therefore, they urge this Court to require Defendant to conduct a new search and use the search date as a cut-off date.

Plaintiffs offer VA regulations, 38 CFR §§1.550-1.559, the VA's Guide for

15

Submitting Freedom of Information Act Requests found on the VA's website and the VA's denials of the 1995 FOIA request as evidence that they were not given notice. Pls. Mem. in Supp. of Mot. for Recons. (Doc. #38) at 15. Defendant has failed to offer any evidence that it even has an established policy applying cut-off dates to FOIA requests.

A review of the record reveals that Plaintiffs were never given actual notice. Defendant has failed to identify any correspondence in which it notified Plaintiffs of a cut-off date. Further, the record does not indicate that Plaintiffs were ever given constructive notice of such a date. The VA's published regulations provide little guidance as to its cut-off date except to say that "reasonably described records in VA custody . . . requested in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, will be made promptly available." 38 C.F.R. 1.553(b). Plaintiffs bring to this Court's attention the 2005 Guide for Submitting Freedom of Information Act Requests found on the VA's FOIA webpage as proof that the VA does not have established procedures which identify a cut-off date. Pls. Mem. in Supp. of Mot. for Recons. (Doc. #38) at 15 Ex. 7. Plaintiffs' assertion that this particular page does not indicate a cut-off date is correct.[6]

_____

[6] The VA's FOIA webpage is easily accessible. See http://www.va.gov/oit/egov/rms/ foia.asp. Upon review of this site, this Court discovered that the VA has published a document entitled "VA Handbook 6300.3, Procedures for Implementing the Freedom of Information Act" which defines a department record as one that "exists at the time the request is received." See Id.

In the absence of a record demonstrating the VA's cut-off date, this Court finds that the most appropriate cut-off date for the search would be the date of the agency's final decision, December 14, 1995. Surely, at that point, Plaintiffs were put on notice that the VA was no longer searching for records. Additionally, this Court finds that such a cut-off date in the absence of a published cut-off date "is consistent with the agency's duty to take reasonable steps to ferret out requested documents." Where an agency failed to give actual notice of the cut-off date applied, but provided constructive notice via its final agency decision that they were no longer searching, this Court finds it unreasonable to expand the scope of Plaintiffs 1995 FOIA claim to a point in 2003, more than seven years after their 1995 FOIA request, particularly where Plaintiff waited four and a half years to file a lawsuit, contesting the VA's response to that 1995 request.

In support of their Motion for Reconsideration, Plaintiffs submit a series of e-mail exchanges between the parties. In these exchanges, Defendant admits that, by October, 2002, the OGC had transferred data from the regional offices into the GCLaws and the OGC had ceased use of the TCIS. Through the affidavit of Elliot Jaspin, Plaintiffs' computer specialist, Plaintiffs claim that a VA computer specialist

---

(follow "FOIA Policies"; then follow VA Handbook 6300.3, Procedures for Implementing the Freedom of Information Act). The handbook is dated January 12, 1998. There is no evidence as to whether this policy was in effect when Plaintiff made their request in 1995, or if it was published on the website at the time of Plaintiffs' request. Defendant has provided no evidence to aid this Court's understanding of these facts. Additionally, absent proper authentication, the webpage is not proper Rule 56 evidence and cannot be considered.

confirmed that the regional counsels' offices were not permitted to change these hundreds of common fields. Pls. Mem. in Supp. of Mot. for Recons. (Doc. #38) at Ex. 10. From this, Plaintiffs conclude "that the OGC could likely have searched all of these common data fields even before it downloaded all of the regional counsel databases . . . in 2002." Id. at 16. Plaintiffs have set forth speculation that the OGC may have been able to download the data sometime "before" 2002. They provide no evidence that OGC had this capability during the scope of the FOIA request, prior to December 14, 1995. In the absence of evidence that Defendant had access to more than 33 data fields prior to December 14, 1995, this Court will not amend its prior decision.

  B.  *Supplemental Search*

  Plaintiffs' second argument is based on the premise that the VA's compliance with this Court's January 23, 2003, decision constitutes a supplemental search, and that the date of this supplemental search should serve as the cut-off date for their 1995 FOIA request. Plaintiffs cite Wilderness Soc'y v. U.S. Bureau of Land Mgmt., 2003 WL 255971 (D. D.C. 2003), for the proposition that "when an agency's initial response to a FOIA request is not adequate, and the court orders the agency to perform a supplemental search, it is not reasonable for the agency to use a date of the initial search as a cut-off." Pls. Mem. in Supp. of Mot. for Recons. (Doc. #38) at 14. Although Wilderness Soc'y does stand for this proposition, the VA's initial response herein was not inadequate and therefore its

18

compliance with ths Court's expanded opinion does not constitute a supplemental search.

In Wilderness Soc'y, the court found that the response of the Bureau of Land Management ("BLM") to Plaintiffs' FOIA request was inadequate and required a further search to be conducted. Factors contributing to this finding included the following: (1) the failure of BLM's search to turn up documents Plaintiffs knew were in the possession of the Bureau, (2) the failure of the BLM to identify the universe of documents searched and the method used in that search, and (3) the BLM's admission that they did not broadly construe Plaintiffs' FOIA request to include documents related to Plaintiffs' FOIA request. Wilderness Soc'y, 2003 WL 255971 at *3-5.

When determining the appropriate cut-off date for this supplemental search, that court made note that the cut-off date of the initial search, January 10, 2002, was suspect. Wilderness Soc'y, 2003 WL 255971 at *6 n18. Plaintiff's FOIA request required that several departments within the BLM conduct a search. One of the affidavits submitted by one of these departments stated that they had not received a copy of Plaintiff's FOIA request until January 25, 2002, well after the January 10, 2002, initial cut-off date. Id. at *6 n18. Due to the confusion of the actual date of the initial search, the court required the BLM to conduct another search, using that supplemental search date as the cut-off date. Id. at *6 n18.

This Court does not find the facts of the instant case analogous to the facts

19

in Wilderness Society.  This Court has never found that the VA's initial search was inadequate.  Plaintiffs, in their Motion for Reconsideration, imply that Defendant's initial search was so, however, basing this upon evidence demonstrating that, in October, 2002, the VA may have had access to more documents then it had in 1995.  As stated above, October, 2002, falls outside the temporal scope of Plaintiffs' 1995 FOIA request.  Plaintiffs merely speculate that the VA may have had access to more than 33 data fields in 1995, but provide no evidence of this.  This Court has no reason to conclude that the VA's search in response to the 1995 FOIA request was inadequate.   Therefore, the OGC's compliance with the Court's January 23, 2003, opinion was not a supplemental search, requiring a new cut-off date.[7]

Plaintiffs have failed to persuade this Court to apply a cut-off date later than the date of the final agency decision.  When reviewing a prior FOIA request in light of a subsequent change of facts, the court must focus "on the time the determination . . . is made.  To require an agency to adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially  mandated reprocessing."  Church of Scientology of Texas v. IRS, 816 F. Supp. 1138, 1148 (W.D. TX. 1993)(citing Bonner v. United States Dep't of State,

---

[7]It is beyond question that, merely because a court later concludes an agency's withholding of relevant documents under an exemption claim was erroneous, an otherwise reasonable search is not transformed into an unreasonable one, thus requiring a new cut-off date.

928 F.2d 1148, 1152 (D.C. Cir. 1991). This Court will not require the OGC to

produce data fields it obtained after October, 2002, in response to a 1995 FOIA

request, responses to which were delivered to the parties requesting such that

same year. However, nothing in this opinion prevents Plaintiffs from filing a

lawsuit against the VA for its alleged failure to respond to the 2003 FOIA requests.

Likewise, nothing prevents Plaintiffs from filing a FOIA claim with the OGC for all

the data fields now online in the GCLaws database. However, this Court will not

alter its prior decision, because Plaintiffs have not provided evidence that, at the

time relevant to their 1995 FOIA request, Defendant had access to more than the

33 data fields acknowledged by the Defendant.

     C. **Vaughn Index**

     In response to Plaintiffs' 1995 FOIA request, Defendant claimed a 5 U.S.C.

§552(b)(5) exemption (hereinafter "Exemption 5") as to data fields that the VA

identified as attorney work product. Mem. in Supp. of Def. Mot. to Dismiss or

Summ. J. (Doc. # 17) at 24. In ruling on the parties' cross motions for summary

judgment, this Court reserved judgment concerning the validity of the invocation of

exemption 5, ordering Defendant to submit a Vaughn index with respect to its

claimed privileges. Dayton Newspapers Inc., 257 F. Supp. 2d at 1006. Defendant

complied with this order and filed such an index on May 23, 2003. (Doc. #23).

On October 28, 2005, Plaintiffs filed a document with this Court purporting to

reserve their right to respond to Defendant's Vaughn index, until after this Court

21

rendered its decision on the Motion for Reconsideration.  (Doc. #52).

In Defendant's opposition to Plaintiffs' Motion for Reconsideration, it states that during correspondence between parties after the Court's January 23, 2003, opinion, it "withdrew its assertion of attorney-work-product privilege."  Defs. Mem. in Opp'n to Pls. Mot. for Recons. (Doc. #40) at 6.  Defendant continues that, since there is no need to amend this Court's prior opinion, "there are no further issues to resolve" and that therefore, this Court should "grant Defendant's renewed motion for summary judgement." [8]  Id.  Plaintiffs have filed two reply memoranda (Docs. #49 & #54) in response to Defendant's opposition to Plaintiffs' Motion for Reconsideration, without responding to Defendant's assertion that it had waived the attorney work product privilege.  In addition, Plaintiffs have not availed themselves of the opportunity provided by this Court to advise whether, in their opinion, a hearing on the Vaughn index/privilege issue is needed.  See Decision and Entry Sustaining Pls. Mot. for Recons. (Doc. #51) at 2.  Accordingly, this Court concludes that Plaintiffs agree with Defendant's assertion that the claim of privilege has been withdrawn and that no further issues remain to be resolved. Given the Defendant's withdrawal of its claim of privilege, any withheld information, relevant to the 1995 FOIA request, which has not already been disclosed to Plaintiffs, should be done so forthwith.  This Court will order the clerk

---

[8] Defendant's assertion that it has subsequently waived its privilege with respect to records withheld pursuant to Exemption 5 does not renew its Motion for Summary Judgment.  It simply resolves an outstanding dispute.

22

to enter final judgment in favor of Defendant and against Plaintiffs.

III.  **Conclusion**

This Court declines to amend its January 23, 2003, decision.  The

Defendant's Motion for Summary Judgment is sustained.  Final judgment will be

entered in favor fo Defendant and against Plaintiffs.

The captioned cause is hereby ordered terminated upon the docket records

of the United State District Court for the Southern District of Ohio, Western

Division, at Dayton.


August 30, 2007

                                        /s/ Walter Herbert Rice
                              _____
                              WALTER HERBERT RICE, JUDGE
                              UNITED STATES DISTRICT COURT

Copies to:
Counsel of Record.